ORTIZ V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-203-CR

MIGUEL ANGEL ORTIZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

INTRODUCTION

In a single point, Appellant Miguel Ortiz argues that the disclosure to the jury of the results of a codefendant’s polygraph test at the punishment phase of his murder trial was reversible error.  We affirm.

PROCEDURAL AND FACTUAL BACKGROUND

Ortiz and codefendant Craig Alford entered a drug house to confront Larry Holmes about shorting Alford on drug purchases.  An eyewitness, Waymon Akins, testified that Ortiz pulled a gun and shot Holmes in the back of the head. Ortiz then turned and shot Holmes’s brother, Robert Holmes, who fell to the floor and played dead.  Akins ran for his life and escaped from the house through a bedroom window.  Akins reported the murder to the police, who soon apprehended Ortiz.  Alford turned himself in. 

The State indicted Ortiz for capital murder and murder.  As part of a plea bargain, Ortiz pleaded guilty to the murder count, and the State waived the capital murder count.  The punishment phase was tried to a jury.  The jury assessed punishment at confinement for life. 

At trial, Ortiz took the stand and testified that Alford gave him the gun  and ordered him to shoot Holmes, and that he followed the order because he feared Alford.  On cross-examination, the following exchange took place between Ortiz and the prosecutor:

Q. And Craig Alford -- and you know this -- turned himself in to the police, didn’t he?

A. Several weeks later, yes.

How about a few days later, Mr. Ortiz?

I don’t know exactly what day.  But I found out he’s hiding, turned himself in because I guess he felt he can, which he did -- make a plea bargain with you.  You set free a killer –

After he passed a polygraph, Mr. Ortiz.

Ortiz immediately objected and requested the trial court to instruct the jury to disregard the prosecutor’s statement.  The trial court sustained the objection and instructed the jury to disregard the statement.  Ortiz then moved for a mistrial, which the trial court denied.  Ortiz moved for a mistrial again at the conclusion of evidence; again, the trial court denied his motion. 

DISCUSSION

The existence and results of a polygraph examination are inadmissible for all purposes. 
 Tennard v. State
, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990).  When, in the course of a trial, reference is made to polygraph tests, the appellate court’s analysis initially focuses on whether the results were revealed to the jury.
  Id.
 at 683-84.  When the existence but not the result of a polygraph test is revealed to the jury, an instruction to disregard is sufficient.  
Id.
  But when the result of the polygraph is revealed to the jury, an instruction to disregard is insufficient, and we must conduct a harm analysis to determine whether the error requires reversal.  
Id.
 at 684.

In this case, the State concedes that it revealed the results of Alford’s polygraph test to the jury and that the trial court’s instruction to disregard was insufficient to cure the error.  Our review, therefore, is limited to whether the error was harmful.  

If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to the appellant’s conviction or punishment. 
Tex. R. App. P.
 44.2(a).  Otherwise, we apply rule 44.2(b) and disregard the error if it does not affect the appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).  

The disclosure of polygraph results does not directly offend the United States Constitution or the Texas Constitution and therefore is not constitutional error.  
See
 
Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (holding that the trial court’s error in admitting hearsay evidence was not constitutional error); 
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (holding that improperly admitted evidence was not constitutional error).  Because we determine that the error is not constitutional, rule 44.2(b) is applicable.  
Tex. R. App. P.
 44.2(b).  Therefore, we are to disregard the error unless it the affected appellant’s substantial rights. 
 Id
.  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King
, 953 S.W.2d at 271 (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall
, 961 S.W.2d at 643.  In making this determination, we review the record as a whole.  
See Johnson
, 967 S.W.2d at 417
.

In 
Tennard
, a murder suspect (Stewart) made statements to a police officer that led to Tennard’s arrest and indictment for the murder.  
Tennard, 
802 S.W2d at 682.  Both Stewart and the police officer testified at Tennard’s trial.  
Id.
  When Tennard’s counsel cross-examined the police officer and attempted to discredit his testimony regarding Stewart’s veracity, the following exchange took place:

Q. But at any rate, you believed Fred Stewart, with all of his offenses and all of the other involvement you had concerning Fred Stewart?

A. Plus I gave him a polygraph test, which confirmed his story, which he passed.

Id. 
at 683.  In conducting its harm analysis, the court of criminal appeals noted that Stewart was not the State’s sole witness or even a crucial witness, and that Stewart’s testimony was corroborated by other witnesses.  
Id.
  The court distinguished
 
the facts of 
Tennard
 from two earlier cases—
Nichols v. State
, 378 S.W.2d 335 (Tex. Crim. App. 1964), and 
Robinson v. State
, 550 S.W.2d 54 (Tex. Crim. App. 1977)—in which polygraph evidence bolstered the testimony of the State’s key witnesses.  
Tennard
, 802 S.W.2d at 684.  The court concluded that the error was harmless.  
Id.

In this case, the prosecutor’s remark about Alford’s polygraph result tended, at most, to indirectly impeach Ortiz’s testimony by bolstering the version of the murder Alford told to the police.  Like Stewart in 
Tennard
, Alford was not the State’s sole witness or even a crucial witness; indeed, he was not called as a witness at all.  This fact makes our case even less like 
Nichols 
and 
Stewart
 than 
Tennard
.

Moreover, Ortiz’s testimony was directly impeached by other evidence at trial.  When Ortiz was arrested for the murder, he wrote a confession claiming sole responsibility for the crime and exculpating Alford.
(footnote: 2)  When the State cross-examined Ortiz, it established that Ortiz could have exited the car on the way to kill Holmes but did not do so; that Ortiz could have fled the scene when Alford entered the drug house ahead of him but did not do so; that Ortiz could have recruited the Holmes brothers to subdue Alford inside the drug house but did not do so; and that Ortiz had possession and control of the only gun in sight before and during the murder.  The State also produced evidence that Ortiz had been dealing and using drugs since he was in the ninth grade; that he had been convicted of attempted burglary, attempted criminal tampering, and bail jumping in New York; and that he had been released on parole three times and violated his parole three times.  And underlying all of this evidence was Ortiz’s ready admission to the jury that he pulled the trigger in what the medical examiner testified was an execution-style killing.
(footnote: 3) 

Finally, the context in which the prosecutor disclosed the polygraph evidence is significant.  The prosecutor stated that Alford passed a polygraph test after Ortiz accused her of having “set free a killer.”  Ortiz had already pleaded guilty to the murder and testified that he himself was the literal killer. To the extent that the polygraph evidence tended to impeach Ortiz by indicating the basis for the prosecutor’s belief that Alford was not the killer, the damage was already done by Ortiz himself when he confessed to the murder in open court.

We hold that, in the context of the entire case against Appellant, the error in disclosing the results of codefendant Alford’s polygraph results before the jury did not have a substantial or injurious effect on the jury’s verdict and did not affect Appellant’s substantial rights.  
See King
, 953 S.W.2d at 271.  Thus, we disregard the error.  
Tex. R. App. P.
 44.2(b). 
 In so holding, we do not condone the conduct of the prosecutor, which might have resulted in reversible error under other circumstances.

We overrule Ortiz’s sole point and affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 18, 2005

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Ortiz claimed at trial that other prisoners in the jail holding tank coerced the confession from him.

3:
The medical examiner testified that Holmes died from a “loose contact” gunshot to the back of his head, meaning that the barrel of the gun was pressed loosely to his skull when Ortiz pulled the trigger.  The medical examiner’s testimony was corroborated by the eyewitness account of Akins.  This evidence also tended to impeach Ortiz’s credibility; Ortiz claimed that he fired the fatal shot four or five feet from Holmes.